UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SJS DISTRIBUTION SYSTEMS, INC.,

        Plaintiff,                                  MEMORANDUM
                                                                AND ORDER
   -against-

                                                                11 CV 1229 (WFK)(RML)
SAM'S EAST, INC., a/k/a SAM'S CLUB,

        Defendant.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiff SJS Distribution Systems, Inc. ("plaintiff" or "SJS") commenced this breach of contract suit against defendant Sam's East, Inc. ("defendant") on February 11, 2011. On June 10, 2013, defendant moved for sanctions against plaintiff for plaintiff's alleged spoliation of evidence. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND AND FACTS

        Familiarity with the facts of this litigation is assumed. This case concerns a dispute arising out of plaintiff's purchase of almost $3 million worth of diapers from defendant. Briefly, plaintiff contends that it discovered a discrepancy between the packaging of the diapers that it ordered and some of the diaper shipments defendant delivered in the fall of 2010. (Complaint, dated Feb. 11, 2011 ("Compl."), ¶¶ 22-25.) Plaintiff claims that it was unable to re-sell those diapers to the intended buyer and incurred damages as a result. (Id. ¶¶ 28-36.)

        On August 24, 2011, defendant served document requests on plaintiff, seeking materials related to the purchase, sale, and delivery of the diapers, packaging nonconformities, storage costs, and plaintiff's efforts to resell the goods to third parties. (Defendant's First Set of

Requests for the Production of Documents, dated Aug. 24, 2011, annexed as Ex. B to the Declaration of Dean L. Chapman Jr., Esq. (the "Chapman Decl.").) On December 9, 2011, plaintiff completed its production of documents, and represented that it had produced all responsive materials in its possession. (Email of Bruce Colfin, dated Dec. 9, 2011, annexed as Ex. C to the Chapman Decl.) By letter dated December 21, 2011, defendant advised plaintiff of alleged deficiencies in plaintiff's document production. (Letter of Dean L. Chapman Jr., Esq., dated Dec. 21, 2011, annexed as Ex. D to the Chapman Decl.) On January 4, 2012, plaintiff provided defendant with responses and objections to the document requests, and again represented that it had provided all responsive documents in its possession. (Responses and Objections of SJS Distribution Systems, Inc., dated Dec. 28, 2011, annexed as Ex. E to the Chapman Decl.) Defendant sent plaintiff a subsequent letter requesting further document production. (Letter of Dean L. Chapman Jr., Esq., dated Jan. 26, 2012, annexed as Ex. F to Chapman Decl.) On February 1, 2012, plaintiff produced three additional pages of documents and served defendant with amended responses and objections, which included a verified statement from plaintiff's president that SJS does not normally save copies of all emails sent or received, that it "did not anticipate" litigation with defendant or the need to save all email communication with defendant, and that plaintiff has no internal emails since it is primarily a one-person entity. (SJS Distribution Systems, Inc.'s Responses, dated Jan. 30, 2012, annexed as Ex. G to the Chapman Decl.) On February 7, 2012, defendant requested permission to file a motion to compel.

        I held a hearing on February 21, 2012, and directed the parties to attempt to agree on a proposed remedy regarding the discovery dispute. (Minute Entry, dated Feb. 21, 2012.) Shortly thereafter, plaintiff's counsel reported that plaintiff had discovered additional relevant

documents. (Minute Entry, dated Feb. 29, 2012.) Plaintiff subsequently produced an additional 181 pages of hard copy documents related to the sale and storage of the diapers. (Chapman Decl. ¶ 11.) On March 23, 2012, defendant informed the court that plaintiff's production remained incomplete, and asserted that relevant electronic records had not been produced. (Motion for Pre-Motion Conference by Sam's Club, dated Mar. 23, 2012.) In the spring of 2012, defendant obtained 334 pages of electronic communications through third-party discovery, which included several emails with third parties referencing SJS personnel that plaintiff had not identified. (Declaration of Bruce E. Colfin in Opposition to Defendant's Motion for Sanctions, dated June 24, 2013 (the "Colfin Decl."), ¶ 31; Chapman Decl. ¶¶ 14-15.) I held discovery conferences on April 11, 2012 and June 11, 2012, and directed the parties to work together and attempt to stipulate to a remedy for the discovery dispute; however, the parties were unable to reach an agreement.

Defendant now moves for sanctions on spoliation grounds, arguing that it has been prejudiced by plaintiff's failure to properly preserve evidence. Defendant asserts that it "is aware of at least 169 relevant emails received by or sent to SJS personnel regarding the subject matter of this litigation, none of which were produced by SJS." (Chapman Decl. ¶ 12.) Defendant also claims that SJS failed to produce any relevant electronic communication relating to the shipment, storage, or attempted resale of the goods in question, and that, with the exception of one letter, SJS did not produce any internal communications or communications with third parties. (Defendant's Memorandum of Law in Support of Motion for Sanctions, dated June 10, 2013 ("Def.'s Mem."), at 4-5.) Defendant requests an order precluding plaintiff from offering any documentary evidence created on or after November 15, 2010 or any testimony regarding events that occurred after November 15, 2010, and an adverse inference jury

instruction on the ground that plaintiff is responsible for the spoliation of electronically stored information. (Id. at 11.) Defendant further seeks an award of attorney's fees and costs incurred in connection with this motion. (Id.)

Plaintiff concedes that its document production was not timely, but argues that "defendant has shown no damage or prejudice against its ability to defend itself"; that defendant could obtain the information it seeks through a deposition of plaintiff or other relevant parties; that defendant, as the seller, is in a better position to have and preserve documentation pertaining to which fraction of the diapers contained the nonconforming packaging in its shipment; and that defendant has already obtained some of the relevant electronic materials through the third-party discovery. (Colfin Decl. ¶¶ 36-37; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Sanctions, dated June 24, 2013 ("Pl.'s Mem."), at 6.)

## STANDARD OF REVIEW

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted). "[A] district court may impose sanctions for spoliation, exercising its inherent power to control litigation." Id. (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43–45 (1991); Sassower v. Field, 973 F.2d 75, 80–81 (2d Cir. 1992)). A party moving for sanctions based on spoliation of evidence must establish three elements: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (citing

Byrnie v. Town of Cromwell, 243 F.3d 93, 107–08 (2d Cir. 2001)). I will address each of these elements in turn.

## DISCUSSION

a. Plaintiff's Obligation to Preserve the Evidence

A party seeking sanctions for destroyed evidence must first show that "the party having control over the evidence . . . had an obligation to preserve it at the time it was destroyed." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998). This obligation usually arises when a "party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Id.

Defendant argues that after discovering the alleged packaging variance in mid-November 2010, plaintiff was under an obligation to preserve all documents and materials relevant to the dispute. (Def.'s Mem. at 7.) According to defendant, electronic correspondence related to the alleged packaging nonconformities and the sale and attempted resale of the goods were clearly relevant, and thus, plaintiff had an obligation to preserve them. (Id.) Plaintiff counters that it did not anticipate litigation and the need to preserve all electronic communication at that time. (Colfin Decl. ¶ 29.)

I find plaintiff's argument unpersuasive. When plaintiff discovered the alleged packaging discrepancies in mid-November, it certainly had notice that any electronic communications and information related to the purchase and sale of the goods from defendant might be relevant to future litigation. Thus, defendant has amply shown that plaintiff had notice

that such records were relevant to litigation and that, as a result, it had an obligation to preserve them.

    b. <u>Plaintiff's Culpability</u>

The party who destroyed evidence must also have had a "culpable state of mind." <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 108 (2d Cir. 2002). The Second Circuit has held that courts must determine culpability on a case by case basis. <u>See Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 267 (2d Cir. 1999). "[I]t makes little sense to confine promotion of [spoliation sanctions] to cases involving only outrageous culpability, where the party victimized by the spoliation is prejudiced irrespective of whether the spoliator acted with intent or gross negligence." <u>Id.</u> at 267-68 (citations omitted). A "culpable state of mind" can mean "knowingly, even if without intent to breach a duty to preserve [the evidence], or <u>negligently</u>." <u>Residential Funding Corp.</u>, 306 F.3d at 108 (emphasis in original) (internal citations and quotations omitted).

Defendant argues that plaintiff's misconduct constitutes, at minimum, gross negligence, and that plaintiff acted "recklessly." (Def.'s Mem. at 7, 9.) However, defendant has provided no direct evidence to show intentional destruction of electronic information or bad faith. Plaintiff argues that its failure to preserve certain documents requested by defendant, while perhaps negligent, does not rise to the level of gross negligence. (Pl.'s Mem. at 5.)

As expressed above, plaintiff had an obligation to preserve the relevant records, but failed to do so. SJS never issued a formal litigation hold to ensure preservation of electronic information, despite admitting familiarity with its obligation to preserve documents in the event that litigation seems likely for a particular matter. (Pl.'s Mem. at 6.) While the failure to timely institute a litigation hold does not constitute gross negligence <u>per se</u>, see <u>Chin v. Port Auth. of</u>

N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) cert. denied, 133 S. Ct. 1724 (U.S. 2013), the facts here establish that SJS's failure to take the most basic document preservation steps, even after it discovered the packaging nonconformities and filed this action, constitutes gross negligence. Such failure is particularly inexcusable given that SJS is the plaintiff in this action and, as such, had full knowledge of the possibility of future litigation. Sekisui Am. Corp. v. Hart, No. 12 CV 3479, 2013 WL 4116322, at *6 (S.D.N.Y. Aug. 15, 2013). As a result, defendant has met its burden of showing that plaintiff was culpable.

 c. Relevance of Destroyed Evidence and Appropriate Sanction

   Finally, the court must determine relevance, meaning "whether there is any likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction." Kronisch, 150 F.3d at 127. Because defendant has presented no evidence that the emails were deleted in bad faith,[1] as the "prejudiced party" it has the burden to produce some evidence suggesting that documents relevant to substantiating its claim would have been included among the destroyed records. Id. at 128. Courts must take care not to "hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence," because doing so "would subvert the purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction." Id. "A moving party may obtain modest sanctions by showing only that the lost evidence was pertinent to its claims. However, where more severe sanctions are at issue, the movant must demonstrate that the lost information would have been favorable to it." In re WRT Energy Sec. Litig., 246 F.R.D. 185, 197 (S.D.N.Y. 2007). See also Zubulake v. UBS Warburg

---

[1] "When evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance." Zabulake v. UBS Warburg LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004). However, "when the destruction is negligent, relevance must be proven by the party seeking the sanctions." Id.

LLC, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) (in the absence of sufficiently egregious conduct, the party seeking sanctions must "demonstrate that a reasonable trier of fact could find that the missing [evidence] would support [its] claims"). "[A] showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." Residential Funding Corp, 306 F.3d 99, 109 (citing Reilly, 181 F.3d at 267-68). See also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010) abrogated in part by Chin, 685 F.3d 135 (2d Cir. 2012).

   Defendant argues that the deleted emails were relevant because they may have contained documentary evidence about the packaging of the diapers, plaintiff's discovery of the nonconforming packaging, and plaintiff's attempts to re-sell the goods. (Def.'s Mem. at 7.) SJS "does not dispute that its lacking document production is indeed relevant," but denies that defendant has been prejudiced by the deletion of such records. (Pl.'s Mem. at 7.)

   While there is no extrinsic evidence that the destroyed records would have been favorable to defendant, defendant correctly notes that the destroyed records are relevant insofar as at least some of the emails referenced the business transaction between the parties that lies at the center of this dispute. Because the emails would certainly have aided defendant in gaining additional information about the circumstances surrounding the sale and attempted re-sale of the goods, it is appropriate to impose a sanction on plaintiff for its spoliation of the records.

   Courts have broad discretion in crafting a proper sanction for spoliation. Kronisch, 150 F.3d at 126. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore "the prejudiced party to the same position [it] would have been in absent

the wrongful destruction of evidence by the opposing party." Goodyear Tire & Rubber Co., 167 F.3d at 779.

Defendant requests an order precluding plaintiff from offering any documentary evidence created on or after November 15, 2010 or any testimony regarding events that occurred after November 15, 2010, in addition to an adverse inference jury instruction. However, the equities do not favor such a drastic remedy. There is no evidence of bad faith on the part of plaintiff and, as stated above, it cannot be said that the destroyed records would have corroborated defendant's account of events. Furthermore, other evidence about the circumstances of the shipments and re-sale of the goods is still available to defendant. See Golia v. Leslie Fay Co., No. 01 CV 1111, 2003 WL 21878788, at *10 (S.D.N.Y. Aug. 7, 2003) (finding that the spoliator's "misconduct has not robbed [the opposing party] of the only evidence on which they could base their case"). Defendant has obtained at least some of the spoliated evidence through third-party discovery and from its own records, and may seek additional information through depositions of relevant parties, including plaintiff. Therefore, I conclude that plaintiff should not be precluded from introducing documentary evidence or testimony regarding information obtained after November 15, 2010.

Nevertheless, there are measures open to defendant that may properly readjust the balance to the extent that it was tilted by plaintiff's failure to preserve email communications. In order to remedy the evidentiary imbalance created by the destruction of evidence, an adverse inference may be appropriate, even in the absence of a showing that the spoliator acted in bad faith. Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 77 (S.D.N.Y. 1991). The proper remedy for the spoliation in this case is an adverse inference against plaintiff that it negligently deleted emails in the fall of 2010 that would have been relevant and favorable to defendant. See

Kronisch, 150 F.3d at 126 (the spoliation of evidence relevant to "proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."). One of the purposes of an adverse inference is to restore the prejudiced party to the same position it would have been in absent the wrongful destruction of evidence by the opposing party. Id. In this case, an adverse inference would restore defendant to such a position.

Additionally, plaintiff's spoliation has compelled defendant to expend additional resources in pursuit of a remedy. Those expenses are properly compensable. Defendant is ordered to submit its time sheets and billing records setting out the costs incurred and the time it spent on this motion. Additionally, defendant is ordered to produce its billing records for any e-mails, letters, or phone calls it made to plaintiff that were for the sole purpose of compelling plaintiff to comply with the discovery process. The court will review the records to make a final determination of the amounts owed. See Quartey v. Schiavone Const. Co., No. 11 CV 2037, 2013 WL 458064, at *4 (E.D.N.Y. Feb. 6, 2013); Li Rong Gao v. Perfect Team Corp., No. 10 CV 1637, 2013 WL 325260, at *13 (E.D.N.Y. Jan. 28, 2013).

## CONCLUSION

For the reasons stated above, defendant's motion is granted in part and denied in part. At trial there will be an adverse inference against plaintiff that it negligently deleted emails that would have been relevant and favorable to defendant. The court hereby orders plaintiff to pay defendant's attorney's fees and costs associated with this motion. Defendant is directed to submit time sheets and billing records setting out the costs incurred and the time spent.

SO ORDERED.

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       October 11, 2013